

**IN THE UNITED STATES DISTRICT COU**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DELL USA L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:03-CV-347 |
| | § | |
| LUCENT TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**CONSTRUING CERTAIN CLAIMS OF UNITED STATES PATENTS**
**6,182,275 AND 6,038,597**

On July 21, 2004, the court conducted a hearing pursuant to the requirements of *Markman v. Westview Instruments, Inc.*, 116 S.Ct. 1384 (1996). Having carefully considered the parties' briefs, Patent No. 6,182,275 ("the '275 Patent"), Patent No. 6,038,597 ("the '597 Patent"), and the arguments of counsel, the court construes the disputed claims as follows:

**STANDARD FOR CONSTRUING CLAIM TERMS**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at

861.  Courts give claim terms their ordinary and customary meaning as understood by a person of

ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d

at 1312-13; *Alloc, Inc. v. Int'l Trade Commission*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular

claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very

instructive.  *Id*.  Other asserted or unasserted claims can also aid in determining the claim's meaning

because claim terms are typically used consistently throughout the patent.  *Id*.  Differences among the

claim terms can also assist in understanding a term's meaning.  *Id*.  For example, when a dependent

claim adds a limitation, it is presumed that the independent claim does not include the limitation.  *Id*.

at 1314-15.  Claims "'must be read in view of the specification, of which they are a part.'"  *Id*. at 1315,

quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995).  "[T]he

specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it

is the single best guide to the meaning of a disputed term.'"  *Id*., quoting *Vitronics Corp. v.

Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Teleflex, Inc. v. Ficosa North America Corp.*,

299 F.3d 1313, 1325 (Fed. Cir. 2002).  This is true because a patentee may define his own terms, give

a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the

claim scope.  *Phillips*, 415 F.3d at 1316.  In these situations, the inventor's lexicography governs.  *Id*.

Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed

meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be

ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325.  But, "'[a]lthough the specification

may aid the court in interpreting the meaning of disputed claim language, particular embodiments and

examples appearing in the specification will not generally be read into the claims.'"  *Comark*

*Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323.  The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent.  *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").  "The prosecution history, which we have designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317 (citation omitted).  "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id*. (citations omitted).  "Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id*., citing *Vitronics*, 90 F.3d at 1582-83; *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'")" (remaining citations omitted).

Although extrinsic evidence can be useful, such evidence is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317, quoting *C.R. Bard, Inc.*, 388 F.3d at 862 (remaining citations omitted).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318-19.  Similarly,

expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field of invention, but an expert's conclusory, unsupported assertions as to a term's definition is unhelpful to a court. *Id.* at 1318. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms . . ." *Id.*

The '275 Patent also contains means-plus-function limitations that require construction. Where a claim limitation is expressed in "means-plus-function" language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112, ¶ 6. *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, 35 U.S.C. § 112, ¶ 6 mandates that "such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id.*, citing 35 U.S.C. § 112, ¶ 6. Accordingly, when faced with a means-plus-function limitation, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitation]." *Id.*

Construing a means-plus-function limitation involves multiple inquiries. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Systems, Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "[t]he next step is to determine the corresponding structure described in the specification and equivalents thereof." *Id.* "'Structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.'" *Id.* The corresponding structure must only be that which actually performs the specified function and not merely enables the corresponding structure to operate as intended. *Asyst Technologies, Inc. v. Empak, Inc.*, 268 F.3d 1364,

1371 (Fed. Cir. 2001).

## THE '275 PATENT

The invention of the '275 Patent describes a method for "generating a compatible order for a build-to-order computer system." '275 Patent, col. 1, lines 32-34. The summary of the '275 Patent provides, in part, as follows:

> It has been discovered that presenting to a user a list of options compatible with a previous choice made by user advantageously enables a system for specifying software programs and hardware components for a computer system to write to a compatible data file an indication of those selections.

'275 Patent, col. 2, lines 21-26.

-------------------------------------

_____ Such a system or method advantageously presents the user with a list of options where every option is compatible or valid with a previously selected choice.

> Another advantage is that the data file generated from the specifying or ordering session only includes compatible choices.

> By presenting the user via a user interface with only compatible choices, the user does not have to be sophisticated in the language of computer equipment or computer software programs to be able to specify and / or order a build-to-order computer system. Thus, a computer system vendor incorporating the present invention does not have to employ highly trained sales staff. Also, such a system allows a computer system vendor to incorporate an automated system to sell build-to-order computer systems over a communications network, such as a push key telephone system, or over the Internet.

'275 Patent, col. 3, lines 26-42.

### DISPUTED CLAIMS OF THE '275 PATENT

### CLAIM 1

The '275 Patent contains a total of 23 claims of which four are disputed. The disputed claims are claims 1, 16, 17 and 21. Claim 1 of the '275 Patent reads as follows:

1.   A method for specifying a computer system comprising:

providing a master data base of a first plurality of options that may be implemented on a computer system;

presenting to a user via a user interface a list of a second plurality of options that may be implemented on a computer system, the second plurality of options selected from the first plurality of options maintained in the master data base;

receiving an indication of a selected choice by a user from the second plurality of options presented to the user via the user interface;

generating, in response to the indication of the selected choice, a list of a third plurality of options that may be implemented on a computer system, the generating step including accessing the master data base, performing a compatibility comparison, and selecting each option of the third plurality of options from the first plurality of options as a function of each option's compatibility with the selected choice, the compatibility comparison including reading a characteristic of each option of the first plurality of options and determining whether the corresponding option represents an option which is compatible with the selected choice;

presenting to the user via the user interface, the list of the third plurality of options;
indicating in a computer system readable data file the selection and part number of the selected choice; and

associating an executable file with the part number of the selected choice, the executable file for use during manufacture of the computer system.

### *Claim Element 1a*

**A method for specifying a computer system comprising:**

The parties initially disputed the meaning of "comprising." Dell proposed: "including, but not limited to." Lucent argued that no construction was required. The parties subsequently agreed on the construction of this term. Based upon the agreement of the parties, the court construes "comprising" as follows:

**"including, but not limited to."**

### *Claim Element 1b*

**master data base of a first plurality of options that may be implemented on a computer system**

The parties disagree on the meaning of the above-stated language.

Dell proposed that a "computer system" should be construed as follows: "an information handling system which can be designed to give independent computing power to one user or a plurality of users."  Dell further proposed that the remaining terms should be construed according to their ordinary meanings.

Lucent proposed that a "master data base" should be construed as follows: "a central, up-to-date file containing a collection of entries for every option offered that may be implemented on a computer system and at least one tag indicating compatibility with other entries."

The court concludes that a "master data base" should be construed as follows:

**"a file containing a collection of entries for every option offered that may be implemented on a computer system."**

### *Claim Element 1c*

**computer system**

The parties disagree on the meaning of a "computer system."

Dell proposed: "an information handling system which can be designed to give independent computing power to one user or a plurality of users."

Lucent proposed: "a complete, working computer that includes not only the computer, but also any software (including an operating system) and peripheral devices that are necessary to make the computer function."

The court agrees with Dell's proposed construction and concludes that the term should be construed as follows:

**"an information handling system which can be designed to give independent computing power to one user or a plurality of users."**

### Claim Element 1d

**generating, in response to the indication of the selected choice, a list of a third plurality of options that may be implemented on a computer system, the generating step including**

The parties appear to agree, and the court concurs, that no construction of this claim term is required.

### Claim 1e

**accessing the master data base, performing a compatibility comparison, and selecting each option of the third plurality of options from the first plurality of options as a function of each option's compatibility with the selected choice**

The parties disagree on the meaning of the above-stated language.  Dell argued that the ordinary meaning of the above-stated language should suffice.  Lucent, however, proposed the following: "accessing the master data base to perform a comparison (using the at least one tag indicating compatibility) of each of the first plurality of options and all previously selected choices in order to select for inclusion in the third plurality of options those options that are designed to work with the selected choices without modification, wherein the comparison cannot be performed using relationship tables."

The court concludes that the term should be construed as follows:

**"accessing the master data base to perform a compatibility comparison of each of the first plurality of options and all previously selected choices in order to select for inclusion in the third plurality of options those options that are compatible with all previously chosen options. The compatibility comparison must be performed using**

**compatibility tags and cannot be performed using relationship tables."**

### *Claim 1f*

**the compatibility comparison including reading a characteristic of each option**

The parties disagree on the meaning of the above-stated language.  Dell argued that the ordinary meaning of the above-stated language should suffice.  Lucent, however, proposed the following: "reading a tag indicating compatibility with other options in the master data base for each option."

The court agrees with Dell that no construction of this claim term is required.  The ordinary meaning suffices.

### *Claim 1g*

**presenting to the user via the user interface, the list of the third plurality of options**

The parties disagree on the meaning of the above-stated language.  Dell argued that the ordinary meaning of the above-stated language should suffice.  Lucent, however, proposed the following: "displaying to the user only those options that are determined to be compatible with all previously selected choices."

The court agrees with Lucent and construes the above-stated claim term as follows:

**"displaying to the user only those options that are determined to be compatible with all previously selected choices."**

### *Claim 1h*

**indicating in a computer system readable data file the selection and part number of the selected choice; and**

Initially, the parties disagreed on the meaning of the above-stated language.

Dell proposed: "a collection of data records in an electronic form that can be read by a computer."

Lucent proposed: "indicating in a computer system readable data file during the specifying session the selection and part number of the selected choice received from the user."

At the *Markman* hearing, the parties agreed to the following claim construction which the court adopts:

**"a collection of related data records in an electronic form that can be read by a computer."**

### *Claim 1i*

**associating an executable file with the part number of the selected choice, the executable file for use during manufacture of the computer system**

The parties disagree on the meaning of the above-stated language.

For the term "executable file", Dell proposed: "a computer program that is ready to run, such as a spreadsheet or word processor."

For the entire phrase, Lucent proposed: "associating a program containing manufacturing instructions that is ready to run on a computer with the part number of the selected choice using the data file generated during the specifying session, which program is employed during manufacturing of the computer system and cannot be a macro (*i.e.*, a symbol, name, or key that represents a list of commands, actions, or keystrokes) or query (*i.e.*, a request for information from a database)."

The court agrees with Lucent's construction of the claim term, as modified, and construes the above-stated claim term as follows:

**"associating a program that is ready to run on a computer with the part number of the selected choice which program is used during manufacturing of the computer system and cannot be a macro (*i.e.*, a symbol, name, or key that represents a list of commands, actions, or keystrokes) or query (*i.e.*, a request for information from a database)."**

## CLAIM 16

Claim 16 of the '275 Patent reads as follows:

16.     A method for specifying a computer system comprising:

providing a master data base of a first plurality of options that may be implemented on a computer system;

presenting to a user via a user interface a list of a second plurality of options that may be implemented on a computer system, the second plurality of options selected from the first plurality of options maintained in the master data base;

receiving an indication of a selected choice by a user from the second plurality of options presented to the user via the user interface, the selected choice being a software program;

generating, in response to the indication of the selected choice, a list of a third plurality of options that may be implemented on a computer system, the generating step including accessing the master data base, performing a compatibility comparison, and selecting each option of the third plurality of options from the first plurality of options as a function of each option's compatibility with the selected choice, the compatibility comparison including reading a characteristic of each option of the first plurality of options and determining whether the corresponding option represents an option that is compatible with the selected choice;

presenting to the user via the user interface, the list of the third plurality of options;

indicating in a computer system readable data file the selection of the selected choice; and

installing the software program in a computer system during manufacturing of the computer system according to the data file.

### *Claim Element 16a*

**indicating in a computer system readable data file the selection of the selected choice; and**

Initially, the parties disagreed on the meaning of the above-stated language.

Dell proposed: "a collection of data records in an electronic form that can be read by a

computer."

Lucent proposed: "indicating in a computer system readable data file during the specifying session the selection of the selected choice received from the user."

At the *Markman* hearing, the parties agreed to the following claim construction which the court adopts:

> **"a collection of related data records in an electronic form that can be read by a computer."**

### *Claim Element 16b*

**installing the software program in a computer system during manufacturing of the computer system according to the data file**

Initially, the parties disagreed on the meaning of the above-stated language.  Dell argued that the ordinary meaning of the above-stated language should suffice.  Lucent, however, proposed the following:  "installing the software program in a computer system during manufacturing of the computer system by employing the data file."

At the *Markman* hearing, the parties agreed that no construction of this claim term is required. Accordingly, the court concludes that the ordinary meaning suffices.

### CLAIM 17

Claim 17 of the '275 Patent reads as follows:

**17.**      A method for specifying a computer system comprising:

providing a master data base of a first plurality of options that may be implemented on
a computer system;

presenting to a user via a user interface a list of a second plurality of options that may
be implemented on a computer system;

receiving an indication of a selected choice by a user from the second plurality of options presented to the user via the user interface;

generating, in response to the indication of the selected choice, a list of a third plurality of options that may be implemented on a computer system, the generating step including accessing the master data base, performing a compatibility comparison, and selecting each option of the third plurality of options from the first plurality of options as a function of each option's compatibility with the selected choice;

presenting to the user via the user interface, the list of the third plurality of options;

indicating in a computer system readable data file the selection of the selected choice; and

indicating in the computer readable data file at least one implementation operation required for the implementation of the selected choice in the computer system during manufacturing of the computer system.

### *Claim Element 17*

**indicating in the computer readable data file at least one implementation operation required for the implementation of the selected choice in the computer system during manufacturing of the computer system.**

The parties disagree on the meaning of the above-stated language.  Dell argued that the ordinary meaning of the above-stated language should suffice.  Lucent, however, proposed the following:  "a complete, working computer that includes not only the computer, but also any software (including an operating system) and peripheral devices that are necessary to make the computer function."

The court construes the above-stated claim term as follows:

**"indicating in the computer system readable data file at least one operation required for the implementation of hardware components and software programs on a computer system including, but not limited to, installation programs, hard-disk-drive formatting operations, testing operations and other similar operations."**

## CLAIM 21

Claim 21 of the '275 Patent reads as follows:

21.     A computer system for generating an order for a computer system comprising:

a computer readable data base including the plurality of entries, each entry representing
an option capable of being implemented on a computer system;

means for providing a list of options to a user interface to be presented to a user via the
user interface;

means for receiving from a user interface an indication of at least one selected choice
by a user from a list of options presented to a user via the user interface;

means for generating a list of compatible options that may be implemented on a
computer system, each of the compatible options is compatible with a previously
selected choice by a user, wherein generating the list of compatible options
includes reading the plurality of entries in the computer readable data base,
performing a compatibility comparison to determine whether an entry represents
an option that is compatible with the previously selected choice, and selecting,
from the data base, options that are determined to be compatible with the
previously selected choice;

means for writing to a computer system readable data file an indication of a selected
choice;

means for implementing the at least one selected choice on a computer system using the
computer system readable data file;

wherein the means for providing provides the list of compatible options to the user
interface;

wherein the means for receiving receives from the user interface an indication of at least
one selected choice from the list of compatible options presented to a user via
the user interface;

wherein the means for writing writes to the computer system readable data file an
indication of the at least one selected choice from the list of compatible options;

wherein the means for implementing includes means for associating an executable file
with the indication of the at least one selected choice and includes means for
executing the executable file during manufacturing to implement the at least one

-14-

selected choice on the computer system.

### *Claim Element 21a*

**A computer system for generating an order for a computer system comprising:**

The parties initially disputed the meaning of "comprising."  Dell proposed: "including, but not limited to."  Lucent argued that no construction was required.  The parties subsequently agreed on the construction of this term.  Based upon the agreement of the parties, the court construes "comprising" as follows:

**"including, but not limited to."**

### *Claim Element 21b*

**a computer readable data base including a plurality of entries, each entry representing an option capable of being implemented on a computer system;**

The parties disagree on the meaning of the above-stated language.

Dell proposed that a "computer system" should be construed as follows: "an information handling system which can be designed to give independent computing power to one user or a plurality of users."  Dell further proposed that the remaining terms should be construed according to their ordinary meanings.

Lucent proposed: "a central, up-to-date file containing a collection of entries for every option offered that may be implemented on a computer system and at least one tag indicating compatibility with other entries."

In light of the claim constructions herein, the court agrees with Dell that no further construction is required for these claim elements.

-15-

*Claim Element 21c*

**means for providing a list of options to a user interface to be presented to a user via the user interface;**

**wherein the means for providing provides the list of compatible options to the user interface;**

The parties disagree on the meaning of the above-stated language.

Dell proposed: (1) the function is "providing a list of options to a user interface to be presented to a user via the user interface;" (2) the structure corresponding to this function is "the control computer system, terminal, and computer program designed to generate a computer readable data file, and equivalents thereof."

Lucent proposed: (1) the functions are "providing a list of options to a user interface to be presented to a user via the user interface" and "displaying to the user only those options that are determined to be compatible with all previously selected choices;" (2) the structure clearly linked or associated with those functions by the specification is the control computer system **103**, terminal **105**, and network connection **110**.

The court construes this means-plus-function limitation as follows:

**The functions are "providing a list of options to a user interface to be presented to a user via the user interface" and "providing the list of compatible options to the user interface."**

**The structure corresponding to these functions by the specification is: "the control computer system, terminal, and computer program designed to provide a list of options to a user interface."**

### Claim Element 21d

**means for receiving from a user interface an indication of at least one selected choice by a user from a list of options presented to a user via the user interface;**

**wherein the means for receiving receives from the user interface an indication of at least one selected choice from the list of compatible options presented to a user via the user interface;**

The parties disagree on the meaning of the above-stated language.

Dell proposed: (1) the function is "receiving from a user interface an indication of at least one selected choice by a user from a list of options presented to a user via the user interface;" (2) the structure corresponding to this function is "the control computer system, a mouse or keyboard, and computer program designed to generate a computer readable data file, and equivalents thereof."

Lucent proposed: (1) the functions are "receiving from a user interface an indication of at least one selected choice by a user from a list of options presented to a user via the user interface" and "receiving from the user interface an indication of at least one selected choice from the list of compatible options presented to a user via the user interface;" (2) the structure clearly linked or associated with those functions by the specification is the control computer system **103**, terminal **105**, and network connection **110**.

The court construes this means-plus-function limitation as follows:

**The functions are "receiving from a user interface an indication of at least one selected choice by a user from a list of options presented to a user via the user interface" and "receiving from the user interface an indication of at least one selected choice from the list of compatible options presented to a user via the user interface."**

**The structure corresponding to these functions by the specification is: "the control computer system, terminal, and computer program designed to provide a list of options to a user interface."**

-17-

*Claim Element 21e*

**means for generating a list of compatible options that may be implemented on a computer system, each of the compatible options is compatible with a previously selected choice by a user, wherein generating the list of compatible options includes reading the plurality of entries in the computer readable data base, performing a compatibility comparison to determine whether an entry represents an option that is compatible with the previously selected choice, and selecting, from the data base, options that are determined to be compatible with the previously selected choice;**
The parties disagree on the meaning of the above-stated language.  Dell argued that the ordinary

meaning of the above-stated language should suffice.  Dell further argued that this claim does not

involve a means-plus-function limitation.

Lucent, however, argued that this claim is a means-plus-function limitation.  Lucent proposed:

(1) the function is "generating a list of compatible options that may be implemented on a computer

system by accessing the master data base to perform a comparison (using the at least one tag indicating

compatibility) of each option therein and all previously selected choices in order to select those options

that are designed to work with the selected choices without modification, wherein the comparison

cannot be performed using relationship tables;" (2) the structure clearly linked or associated with this

function by the specification is the control computer system **103**, network connection **120**, and master

data base **125** located on a server utilizing compatibility tags of the entries therein."

The court concludes that this claim involves a means-plus-function limitation and construes the

claim as follows:

> **The function is "generating a list of compatible options that may be implemented on a computer system, each of the compatible options is compatible with a previously selected choice by a user, wherein generating the list of compatible options includes reading the plurality of entries in the computer readable data base, performing a compatibility comparison to determine whether an entry represents an option that is compatible with the previously selected choice, and selecting, from the data base, options that are determined to be compatible with the previously selected choice**."

**The structure corresponding to this function by the specification is: "the control computer system, a computer program designed to provide a list of options to a user interface, and master data base utilizing compatibility tags of the entries therein."**

### *Claim Element 21f*

**means for writing to a computer system readable data file an indication of a selected choice;**

**wherein the means for writing writes to the computer system readable data file an indication of the at least one selected choice from the list of compatible options;**

The parties disagree on the meaning of the above-stated language.

Dell proposed: (1) the function is "writing to a computer system readable data file an indication of a selected choice;" (2) the structure corresponding to this function is: "the control computer system, and a computer system readable data file, including but not limited to a text file, and equivalents thereof."

Lucent proposed: (1) the functions are "writing to a computer system readable data file an indication of a selected choice" and "writing to the computer system readable data file an indication of the at least one selected choice from the list of compatible options;" (2) the structure clearly linked or associated with those functions by the specification is the control computer system **103**, control memory **107**, and a computer system readable data file.

At the *Markman* hearing, the parties agreed to the construction of the function of this means-plus-function limitation and the court adopts the same. The court construes this claim as follows:

**The functions are "writing to a computer system readable data file an indication of a selected choice" and "writing to the computer system readable data file an indication of the at least one selected choice from the list of compatible options."**

**The structure corresponding to these functions by the specification is: "the control computer system, control memory, and a computer system readable data file."**

### *Claim Element 21g*

**means for implementing the at least one selected choice on a computer system using the computer system readable data file;**

**wherein the means for implementing includes means for associating an executable file with the indication of the at least one selected choice and includes means for executing the executable file during manufacturing to implement the at least one selected choice on the computer system.**

The parties disagree on the meaning of the above-stated language.

Dell proposed: (1) the function is "implementing the at least one selected choice on a computer system using the computer system readable data file;" (2) the structure corresponding to this function is: "a targeted or specified computer system on which the selections made by the user as indicated by the user interface are implemented;" (3) the structure corresponding to the "wherein" clause is: "(a) the control computer system and an executable file as previously defined, and equivalents thereof; and (b) each of the structures cited below for executing the executable file, including but not limited to the executable file being used to generate other files that are used in manufacturing a targeted or specified computer system, or printing the file to enable a person in manufacturing to manually enter the choices during the manufacturing process, or use of a parser program and shell script files in manufacturing, or loading the executable file onto a data server in manufacturing, or using the executable file to create a floppy disk or automated program."

Lucent proposed: (1) the function is "implementing the at least one selected choice on a computer system using the computer system readable data file," which includes the subsidiary functions of "associating a program containing manufacturing instructions that is ready to run on a computer with the part number of the selected choice using the data file generated during the specifying session, which program cannot be a macro (*i.e.*, a symbol, name, or key that represents a list of commands, actions, or

keystrokes) or query (*i.e.*, a request for information from a database)" and "executing the executable file during manufacturing to implement the at least one selected choice on the computer system;" (2) the structure clearly linked or associated with those functions by the specification is control computer system **103**, network connection **130**, and a computer system located at the manufacturing facility where the computer system is assembled containing a computer system readable data file, parser software program, executable shell script file(s), and script processing program, and equivalents thereof."

The court construes this means-plus-function limitation as follows:

**The function is "implementing the at least one selected choice on a computer system readable data file" which includes "associating a program that is ready to run on a computer with the part number of the selected choice which program is used during manufacturing of the computer system and cannot be a macro (*i.e.*, a symbol, name, or key that represents a list of commands, actions, or keystrokes) or query (*i.e.*, a request for information from a database)" and "executing the executable file during manufacturing to implement the at least one selected choice on the computer system."**

**The structure corresponding to these functions by the specification is: "the control computer system and a computer system readable data file which is used to manufacture a targeted computer system as per the selections made by the user as indicated in the data file which includes, but is not limited to, the executable file being used to generate other files, or printing the file to enable a person in manufacturing to manually enter the choices during the manufacturing process, or use of a parser program and shell script files in manufacturing, or loading the executable file onto a data server in manufacturing, or using the executable file to create a floppy disk or automated program."**

## THE '597 PATENT

The invention of the '597 Patent describes a method to access, manage and update information on an Internet site from a "first access point" while allowing multi-level access to the information from a "second access point."  '597 Patent, col. 1, lines 6-10.

### DISPUTED CLAIMS OF THE '597 PATENT

### CLAIM 1

The '597 Patent contains a total of 17 claims of which two are disputed.  The disputed claims are claims 1 and 11.  Claim 1 of the '597 Patent reads as follows:

1.    An Internet information device comprising:

a web site;

a first user intranet point coupled for continuously providing multi-level managed information to the web site;

a second user Internet point coupled for providing multi-level user access to the managed information such that a selected password provides access to all of the managed information and another selected password provides user access to a limited portion of the managed information;

wherein the web site includes a web page having customized information from the first user point for users at the second user point, and

wherein the web page is accessible from the second user point via an unlisted universal resource locator, and users at the second user point are provided with at least one user ID and user password.

### *Claim Element 1a*

### An Internet information device comprising:

The parties initially disputed the meaning of "comprising."  Dell proposed: "including, but not limited to."  Lucent argued that no construction was required.  The parties subsequently agreed on the

-22-

construction of this term.  Based upon the agreement of the parties, the court construes "comprising" as follows:

**"including, but not limited to."**

### *Claim Element 1b*

**first user intranet point**

The parties disagree on the meaning of the above-stated language.

Dell argued that the ordinary meaning should suffice.  Lucent proposed: "any terminal on a private network used by a site provider to input multi-level managed information to the web site."  The court construes the above-stated claim term as follows:

**"a terminal on a private network through which a web site provider accesses a site."**

### *Claim Element 1c*

**coupled for continuously providing**

The parties disagree on the meaning of "coupled for continuously providing."

Dell proposed: "providing multiple times daily."

Lucent proposed: "inputting at all times."

The court construes "coupled for continuously providing" as follows:

**"continuously connected such that the first user can update the web site as new information becomes available."**

### *Claim Element 1d*

**multi-level managed information**

The parties disagree on the meaning of "multi-level managed information."

Dell argued that the ordinary meaning should suffice.  Lucent proposed: "the information

inputted to the web site from the first user intranet point (*i.e.*, any terminal on a private network used by a site provider), which is organized or grouped by the first user intranet point into more than one level of user access."

The court construes "multi-level managed information" as follows:

**"the information inputted to the web site from the first user intranet point which is organized or grouped into more than one level of user access."**

### Claim Element 1e

**second user Internet point**

The parties disagree on the meaning of "second user Internet point."

Dell argued that the ordinary meaning should suffice.  Lucent proposed: "any terminal used by a site user via the Internet to access all or part of the multi-level managed information at the web site."

The court construes "second user Internet point" as follows:

**"a terminal connected to the Internet through which the second user accesses the web site."**

### Claim Element 1f

**multi-level user access**

Initially, the parties disagreed on the meaning of "multi-level user access."  Dell argued that the ordinary meaning should suffice.  Lucent proposed: "the multiple levels of user access correlate to the multiple levels of the multi-level managed information."  The parties subsequently agreed, and the court concurs, that no construction of this claim term is required.

### Claim Element 1g

**wherein the web site includes a web page having customized information from the first user point for users at the second user point**

-24-

The parties disagree on the meaning of the above-stated language.

Dell argued that the ordinary meaning should suffice.  Lucent proposed: "the web site includes a web page containing a subset of the managed information that is assembled to suit the needs or preferences of users at the second user Internet point."  The court concludes that no construction of this claim term is required.

### Claim Element 1h

**wherein the web page is accessible from the second user point via an unlisted universal resource locator, and users at the second user point are provided with at least one user ID and user password**

The parties disagree on the meaning of "unlisted universal resource locator."

Dell proposed: "an internet address not commonly accessible."  Dell further proposed that the remaining terms should be construed according to their ordinary meanings.

Lucent proposed: "the web page containing the customized information is accessible from the second user Internet point by inputting a confidential URL not available through a web search that, along with at least one user ID and user password, has been previously provided to the second user Internet point."

The court construes "unlisted universal resource locator" as follows:

**"an internet address not purposefully made available for discovery through a web search or otherwise."**

### CLAIM 11

Claim 11 of the '597 Patent reads as follows:

**11.**     An Internet information method comprising the steps of:

inputting multi-level information to the web site from a first user intranet point;

continuously updating the multi-level information;

accessing all of the information at the web site through a first level password from a
second user Internet point;

accessing limited portions of the information at the web site through at least one other
level password from the second user point;

including a web page at the web site having customized information from the first user
point for users at the second user point; and

accessing the web page by users at the second user point having an unlisted universal
resource locator, at least one user ID and at least one user password.

### Claim Element 11a

**An Internet information method comprising the steps of:**

The parties initially disputed the meaning of "comprising."  Dell proposed: "including, but not

limited to."  Lucent argued that no construction was required.  The parties subsequently agreed on the

construction of this term.  Based upon the agreement of the parties, the court construes "comprising"

as follows:

**"including, but not limited to."**

### Claim Element 11b

**multi-level information**

The parties disagree on the meaning of "multi-level information."

Dell argued that the ordinary meaning should suffice.  Lucent proposed: "the information

inputted to the web site from the first user intranet point (*i.e.*, any terminal on a private network used

by a site provider), which is organized or grouped by the first user intranet point into more than one

level of user access."

The court construes "multi-level information" as follows:

**"the information inputted to the web site from the first user intranet point which is organized or grouped into more than one level of user access."**

### *Claim Element 11c*

**continuously updating**

The parties disagree on the meaning of "continuously updating."

Dell proposed: "maintaining current by multiple daily updates."

Lucent proposed: "bringing up to date at all times."

The court construes "continuously updating" as follows:

**"bringing up to date as new information becomes available."**

### *Claim Element 11d*

**including a web page at the web site having customized information from the first user point for users at the second user point**

The parties disagree on the meaning of the above-stated language.

Dell argued that the ordinary meaning should suffice.  Lucent proposed: "the web site includes a web page containing a subset of the managed information that is assembled to suit the needs or preferences of users at the second user Internet point."  The court concludes that no construction of this claim term is required.

### *Claim Element 11e*

**accessing the web page by users at the second user point having an unlisted universal resource locator, at least one user ID and at least one user password**

The parties disagree on the meaning of "unlisted universal resource locator."

Dell proposed: "an internet address not commonly accessible."  Dell further proposed that the remaining terms should be construed according to their ordinary meanings.

Lucent proposed: "the web page containing the customized information is accessible from the

second user Internet point by inputting a confidential URL not available through a web search that, along with at least one user ID and user password, has been previously provided to the second user Internet point."

The court construes "unlisted universal resource locator" as follows:

**"an internet address not purposefully made available for discovery through a web search or otherwise."**

## CONCLUSION

Based on the foregoing, the court construes the disputed terms and limitations of the '275 Patent and the '597 Patent as set forth above.

IT IS SO ORDERED.

**SIGNED this the 1st day of November, 2006.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE